# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINE CONROY, AND ON BEHALF<br>OF HER MINOR SON, "PC", MARTIN CONROY,<br>AND LAUREN CONROY,<br>　　　　　　　　PLAINTIFFS | : CIVIL ACTION NO. |
| V. | : |
| DAVID A. CARON, TOWN OF GLASTONBURY<br>CHIEF OF POLICE:　DONALD BISI, POLICE<br>LIEUTENANT; MICHAEL FURLONG, POLICE<br>SERGEANT; CORY DAVIS, POLICE SERGEANT;<br>JAMES KENNEDY, POLICE AGENT;<br>DAVID GONCALVES, POLICE OFFICER;<br>STEVEN MOYER, POLICE OFFICER;<br>MATTHEW GEDDES, POLICE OFFICER;<br>MICHAEL BACHAND, POLICE OFFICER;<br>BRYAN VERILLO, POLICE OFFICER;<br>BRANDON RITCHIE, POLICE OFFICER; | :<br><br>:<br><br>:<br><br>:<br><br>: |
| MARC MONTMINY, TOWN OF MANCHESTER<br>CHIEF OF POLICE; ANTHONY PALOMBIZIO,<br>POLICE SERGEANT; SHAWN KROM, POLICE<br>OFFICER; MATTHEW PACE, POLICE OFFICER; | :<br><br>: |
| JAMES KENNY, TOWN OF VERNON CHIEF OF<br>POLICE; CHRISTOPHER PRYPUTNEWICZ, POLICE<br>SERGEANT;<br>MATTHEW REED, TOWN OF SOUTH WINDSOR<br>CHIEF OF POLICE;  CLAVERDON, SOUTH WINDSOR<br>POLICE AGENT;  IN THEIR INDIVIDUAL AND<br>OFFICIAL CAPACITY AND TOWN OF GLASTONBURY;<br>TOWN OF MANCHESTER; TOWN OF SOUTH WINDSOR<br>AND TOWN OF VERNON,<br>　　　　　　　　DEFENDANTS | :<br><br>:<br><br>:<br><br>: AUGUST 14, 2014 |

## COMPLAINT

NATURE OF ACTION

1.　　　　This is an action for deprivation of civil rights under 42 U.S.C. § 1983 and the United States

and Connecticut Constitution that secure for the Plaintiffs to be free from excessive force,

illegal search and seizure, undue bodily restraint, deliberate indifference and denial of

medical care, false arrest, malicious prosecution and for related torts under the common law of the State of Connecticut. The Plaintiffs were denied rights secured under the provisions of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.


JURISDICTION AND VENUE

2.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1367, 2201, 2202 and 42 U.S.C. § §1983, 1988 the Fourth and Fourteenth Amendments to the United States Constitution and Article First, §§ 7 and 9 of the Connecticut Constitution, and Connecticut General Statutes ("CGS")  § 7-465, and CGS § 52-557.

3.      Venue is proper within this judicial district pursuant to 28 U.S.C. §1391 because all of the defendants are residents of the State of Connecticut and a substantial part of the events or omissions giving rise to the claims occurred in the State of Connecticut.

4.      The Court has personal jurisdiction over the Towns of Glastonbury, Manchester, Vernon and South Windsor because these Towns are subject to general jurisdiction in the State of Connecticut and because the Towns committed the tortious acts from which some of the causes of action arise.

5.      The Court has personal jurisdiction over defendants because each is a resident of the State of Connecticut and subject to general jurisdiction in this state and because they committed tortious acts, from which this cause of action arises, in the State of Connecticut.

6.      Notice of intent to sue was duly given to defendants on February 1, 2013 in accordance with the written notice provisions of CGS § 7-465 and 7-1-101a.

PARTIES

7.      The Plaintiff CHRISTINE CONROY, was at all times mentioned herein a female resident of the Town of Glastonbury and State of Connecticut, and the mother of the remaining Plaintiffs.

8.      The Plaintiff, "PC"  was at all times mentioned herein, an eleven-year-old male who resided with his mother in the Town of Glastonbury, Connecticut.  The true name of the minor Plaintiff will be filed with this court under seal, to protect him, because of his age and the nature of the matters set forth herein.

9.      The Plaintiff LAUREN CONROY, was at all times mentioned herein a 20 year old female resident of the Town of Glastonbury and State of Connecticut.

10.     The Plaintiff MARTIN CONROY, was at all times mentioned herein a 17 year old male resident of the Town of Glastonbury and State of Connecticut. He is currently 20 years old.

11.     At all times relevant to the claims asserted herein, the EASTERN CONNECTICUT NARCOTICS TASK FORCE ("ECNTF") was a specialized unit formed through a mutual aid compact pursuant to Connecticut General Statutes§ 7-277a between the Defendant towns of Glastonbury, Manchester, Vernon and South Windsor.

12.     At all times relevant to the claims asserted herein, the defendants chiefs of police were the governing body of ECNTF, w h i c h  was comprised of the defendant Chiefs of Glastonbury, Manchester, Vernon and South Windsor.

13.     The Defendant, DAVID CARON ("Caron"), during all times mentioned in this action, was a duly appointed chief of police for the Town of Glastonbury Police Department. He is sued in his individual and official capacity.

14.     The Defendant, DONALD BISI ("Bisi"), during all times mentioned in this action, was a duly appointed police lieutenant for the Town of Glastonbury Police Department. He is sued in his individual and official capacity.

15.     The Defendant, MICHAEL FURLONG ("Furlong"), during all times mentioned in this action, was a duly appointed police sergeant for the Town of Glastonbury Police Department.  He is sued in his individual and official capacity.

16.     The Defendant, CORY DAVIS ("Davis"), during all times mentioned in this action, was a duly appointed police agent (now sergeant) for the Town of Glastonbury Police Department, and a member of the ECNTF. He is sued in his individual and official capacity.

17.     The defendant, JAMES KENNEDY ("Kennedy"), during all times mentioned in this action, was a duly appointed police agent, acting in his official capacity for the Town of Glastonbury Police Department.  He is sued in his individual and official capacity.

18.     The defendant, DAVID GONCALVES ("Goncalves"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Glastonbury Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

19.     The defendant, STEVEN MOYER ("Moyer"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Glastonbury Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

20.     The defendant, MATTHEW GEDDES ("Geddes"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Glastonbury Police Department.  He is sued in his individual and official capacity.

21.     The defendant, MICHAEL BACHAND ("Bachand"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of

Glastonbury Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

22.     The defendant, BRYAN VERILLO ("Verillo"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Glastonbury Police Department, and a member of the ECNTF. He is sued in his individual and official capacity.

23.     The defendant, BRANDON RITCHIE ("Ritchie"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Glastonbury Police Department.  He is sued in his individual and official capacity.

24.     The defendant, TOWN OF GLASTONBURY, during all times mentioned in this action, was a municipality incorporated under the laws and within the State of Connecticut.

25.     The defendant, MARC MONTMINY ("Montiny"), during all times mentioned in this action, was the duly appointed Chief of Police for the Town of Manchester Police Department. He is sued in his individual and official capacity.

26.     The defendant, ANTHONY POLOMBIZIO ("Palombizio"), during all times mentioned in this action, was a duly appointed police sergeant, acting in his official capacity for the Town of Manchester Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

27.     The defendant, SHAWN KROM ("KROM"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Manchester Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

28.     The defendant, MATTHEW PACE ("Pace"), during all times mentioned in this action, was a duly appointed police officer, acting in his official capacity for the Town of Manchester Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

29.    The defendant, TOWN OF MANCHESTER, during all times mentioned in this action, was a municipality incorporated under the laws and within the State of Connecticut.

30.    The defendant, JAMES KENNY ("Kenny") during all times mentioned in this action, was the duly appointed chief of police, acting in his official capacity for the Town of Vernon Police Department.  He is sued in his individual and official capacity.

31.    The defendant, CHRISTOPHER PRYPUTNEWICZ ("Pryputnewicz"), during all times mentioned in this action, was a duly appointed police sergeant, acting in his official capacity for the Town of Vernon Police Department, and a member of the ECNTF.  He is sued in his individual and official capacity.

32.    The defendant, TOWN OF VERNON, during all times mentioned in this action, was a municipality incorporated under the laws and within the State of Connecticut.

33.    The defendant, MATTHEW REED ("Reed") during all times mentioned in this action, was a duly appointed chief of police, acting in his official capacity for the Town of South Windsor Police Department.  He is sued in his individual and official capacity.

34.    The defendant, CLAVERDON ("Claverdon"), during all times mentioned in this action, was a duly appointed police agent, acting in his official capacity for the Town of South Windsor Police Department, and a member of the ECNTF. He is sued in his individual and official capacity.

35.    The defendant, TOWN OF SOUTH WINDSOR, during all times mentioned in this action, was a municipality incorporated under the laws and within the State of Connecticut.

36.    The police defendants, during all times mentioned in this action, acted in the performance of their duties, under color of law, and of the Constitution and Statutes of the United States and State of Connecticut, the laws, charter, ordinances, polices, rules, regulations, customs and usages of the State of Connecticut and the Towns of Glastonbury, Manchester, Vernon and South Windsor.

37.     The defendant, Towns of Glastonbury, Manchester, Vernon and South Windsor are subject to indemnify the individual defendants pursuant to CGSA §§ 7-465 and 52-557.

**COUNT ONE**        **(Deprivation of Civil Rights under 42 U.S.C. § 1983 (Illegal Search & Excessive Force)**

38.     Incorporating paragraphs 1-37

39.     On or about 2012 the Towns of Glastonbury, Manchester, Vernon and South Windsor were operating the ECNTF, which was staffed by members of each town's police departments.

40.     In August 2012, defendant Goncalves, a member of the ECNTF, initiated an investigation against plaintiffs based upon his dubious claim of two anonymous reports of "suspicious activity" occurring at the residence of the plaintiffs on Broad Moor in Glastonbury.

41.     The "two separate" anonymous persons who provided this information have never been identified.

42.     The "information" Goncalves purportedly received was reported as, "constant foot and vehicular traffic at the residence," and that, in Goncalves view, "the youths will typically hang out in the garage" which Goncalves stated in his reports was "consistent with drug transactions taking place at the residence." (Emphasis added).

43.     There was no other information other than the above that Goncalves relied on to begin his investigation and surveillance of the plaintiffs.  There was no reasonable basis to investigate the plaintiffs or for his solo surveillance the residence.

44.     The plaintiffs' residence in the summer of 2012 had four teenage children and a multitude of their respective friends that visited, both on foot and in vehicles, rendering the basis of investigating the plaintiffs or the residence incongruous.

45.     Gonclaves knew or should have known that "constant foot and vehicular traffic", and "hanging out" alone, is not an indication of "drug activity."

46.     Goncalves fabricated this anonymous information to support a retaliatory and malicious investigation of the plaintiffs.

47.   Using the "information" as a basis, Goncalves began an illegal, illicit, and immoral campaign engaging both other Glastonbury officers and eventually the ECNTF to violate the plaintiffs' rights protected by the Fourth, Eight and Fourteenth Amendments to the United States Constitution.

48.   On August 22, 2012, at approximately 1P.M. in the afternoon, Goncalves began conducting surveillance of plaintiffs' residence on Broad Moor in Glastonbury, hiding in the tree line and bushes hundreds of yards away and using binoculars to see the "area in which the youths were hanging out."

49.   Goncalves has never been specific in his reports, search warrant affidavit about what "area" he was surveilling.

50.   Goncalves falsely reported that he saw in this "area" in which the youths were hanging out was "littered with beer cans."

51.   After conducting his surveillance for an unknown amount of time, Goncalves contacted defendant SGT Furlong, and upon arrival the two approached the residence on the pretext of conducting a "knock and talk."

52.   At the time Goncalves and Furlong had no reasonable basis for entering the property of the plaintiffs.

53.   In law enforcement, a "knock and talk" is an investigative tactic where one or more police officers approaches a private residence, knocks on the door, and requests consent from the owner to search the residence.

54.   The "knock and talk" is performed when criminal activity is suspected, but there is not sufficient evidence to obtain a search warrant.

55.   Goncalves and Furlong entered the property, falsely claimed they saw several beer cans strewn in the, once again unspecified, "area" that Goncalves observed previously from the bushes with his binoculars.

56.     Goncalves and Furlong illegally entered the garage of the residence by opening the garage door.

57.     After the illegal entry into the garage Goncalves falsely reported that he "recognized" in "plain view" from his training and experience, an empty marijuana pipe.

58.      Goncalves claimed that he had seen the same "youths," from the bushes with his binocular, through the closed garage door.

59.     Apparently disbanding the "knock and talk," Goncalves and Furlong forcibly{ opened the garage door without a warrant or any other permissible basis.

60.      Goncalves falsely stated that the youths he inexplicably saw through the closed garage door had left the garage and went into the living area of the residence.

61.     After illegally entering the garage, Furlong banged on the door from the garage to the living area and shouted to plaintiff Lauren Conroy and ordered everyone to exit the residence.

62.     Plaintiffs Lauren Conroy, Martin Conroy and two others were without cause, forced into the garage and taken into custody and placed on the floor of the garage.

63.     Throughout this illegal search seizure, the plaintiffs Lauren Conroy and Martin Conroy did not possess any controlled substances, and were not consuming any alcoholic substances.

64.     Plaintiff Martin Conroy was a minor at the time of the incident and was illegally questioned.

65.     Goncalves and Furlong requested back up and defendant Geddes subsequently arrived at the residence.

66.     At no point during the incident was there any reason or probable cause search the residence or take into custody the plaintiffs.

67.     After plaintiffs protested the illegal search, seizure and custody Goncalves, Furlong and Geddes violently and unexpectedly kicked plaintiff Martin Conroy's legs out from under him and slammed him onto the concrete floor, hitting his head and causing serious injury.

68.     After plaintiff Martin Conroy lay injured on the ground, Geddes took out his Taser at the direction of Furlong and threatened to "deploy" it on Martin Conroy.

69.   After Martin Conroy was forcibly handcuffed him behind the back, Goncalves, Furlong and Geddes hit and kicked plaintiff causing and kneeing him in the back causing  further injury to the plaintiff.

70.   At this point, Defendants became aware that another person was recording the above-mentioned excessive force with a mobile phone from the doorway of the garage.

71.   Goncalves, Furlong and Geddes at which point he was threatened the recorder who retreated to the residence.

72.   Following knowledge that they were recorded using excessive force Furlong, Goncalves and Geddes jointly and severally, requested all available personnel to "assist" in obtaining the mobile phone recording.

73.   The defendants, jointly and severally illegally seized the mobile phone from the person who recorded them using excessive force and destroyed the recording.

74.   The empty pipe and empty beer cans were seized, without a warrant, or any permissible basis and the defendant Davis illegally entered and photographed the residence.

75.   Despite being subjected to a head injury, defendants did not obtain any medical treatment for Martin Conroy and instead, defendant Ritchie transported him to Glastonbury Police holding cell.

76.   Goncalves pressed and questioned Lauren Conroy in an attempt to gain a custodial admission that there was marijuana inside the residence.

77.   Defendants coercively and aggressively attempted to obtain consent to search the residence from Lauren Conroy, which was denied.

78.   After the above misconducts, Goncalves called plaintiff Christine Conroy, who is the mother of Lauren and Martin, who arrived soon thereafter.

79.   Defendants again sought consent to search the residence from Christine Conroy.

80.  Lauren Conroy was falsely charged with possession of Less than ½ ounce of marijuana, possession of drug paraphernalia and possession of alcohol by a Minor; presumably residue from the illegally seized multicolored pipe found in the garage.

81.  Martin Conroy was later falsely charged with and issued an infraction for Possession of Less than ½ ounce of marijuana, possession of drug paraphernalia and possession of alcohol by a Minor; and disorderly conduct and interfering with a police officer.

82.  Martin Conroy complained repeatedly about his injuries and was denied medical attention.

83.  At the police station, defendant Kennedy refused medical treatment of Martin Conroy's injuries and falsely stated that he observed no injury and that Martin Conroy did not claim to be injured, despite reporting that Martin Conroy claimed that they "beat the shit out of me."

84.  The defendants were deliberately indifferent to Martin Conroy's need for medical attention.

85.  As a result of defendants beating, Martin Conroy suffered serious head injuries, causing headaches, loss of sleep, anxiety, trauma and severe pain and suffering.

86.  In a post incident report, Goncalves falsely stated that Martin Conroy was a drug dealer.

87.  In a post incident report, Goncalves falsely stated that Christine Conroy uses money made from her son's "drug dealing to supplement [his] mother's income as she is a single parent."

88.  Gonzales's statement was false, sexist, and inflammatory and intended to bolster his campaign of harassment and rights violations against the plaintiffs.

89.  After the August 22, 2012 incident, and because plaintiffs asserted their Constitutional rights, the defendant Goncalves, now with the aiding and abetting of all the defendants continued with impunity his pursuit of the plaintiffs beginning with the involvement of his cohorts in the ECNTF.

90.  On or about August 28, 2012 Goncalves and defendant Pace, a Manchester police officer, in their capacity as members of the ECNTF, drafted a search warrant affidavit for the plaintiffs' residence on Broad Moor in Glastonbury.

91.   The search warrant, based entirely on the August 22, 2012 unlawful search and seizure stated that there was probable cause to believe that the residence had Marijuana, drug paraphernalia and "financial records reflecting profits from narcotics trafficking.

92.   The search warrant affidavit contained material misrepresentations as follow:

   A.   "That in August of 2012 Affiant Goncalves received information from two separate concerned neighbors residing in the area of Broad Moor in Glastonbury. Both citizens wished to remain anonymous and provided Affiant Goncalves with information regarding suspicious activity occurring at 46 Broad Moor.

   B.   "That on 8/22/12 Affiant Goncalves was conducting surveillance in the area of (  )Broad Moor…[and]observed at least three youths hanging out in the center of a three bay garage at the residence. Using binoculars, Affiant Goncalves was able to see the area in which the youths were hanging out was littered with beer cans.  None of the youths appeared to be over 21."

   C.   "That Affiant Goncalves contacted Glastonbury Police Sergeant Furlong and attempted to conduct a "knock and talk" at the residence. Upon approaching the open garage door of the residence, several "Busch" beer cans were observed strewn about in the area that Affiant Goncalves observed the youths sitting in.  Also located in plain view was a multi-colored smoking pipe containing burnt marijuana residue, which Affiant Goncalves recognized from his training and experience as marijuana."

   D.   That Plaintiffs committed the infractions of possession of marijuana and alcohol.

   E.   That Christine Conroy had told her daughter Lauren "several times to just get the marijuana and give it to the officers."

93.   On August 28, 2012, after defendants submitted the search warrant affidavit that contained, inter alia, the above referenced material misrepresentations it was approved by the to the court.

94.     Thereafter, on night of Wednesday, September 5, 2012 at approximately 9:43 P.M., the defendants in their capacity as the ECNTF executed the above deceitfully obtained search warrant at the residence of the plaintiffs at on Broad Moor in Glastonbury, Connecticut.

95.     The ECNTF officers named defendants above, began their raid of the plaintiffs' residence by entering the garage wearing masks and armor and using a police dog, and went throughout the residence.

96.     The plaintiff Martin Conroy was found with four friends watching television in the basement living area.   Thereafter, defendants told PC that he would be taken away from his mother, causing him extreme emotional distress.

97.     ECNTF officers used excessive force by slamming Martin Conroy to the ground, and forcibly put handcuffs on excessively tight and once again were threatened by Goncalves that he "would be tased."

98.     ECNTF officers went to the upstairs bedroom of plaintiff Lauren Conroy were she was with two other girlfriends.  The young women were ordered to the kitchen.

99.     Plaintiff P.C., eleven at the time, was asleep on the first floor of the residence and awoken by the masked ECNTF officers putting him into a state of shock and fear.

100.    ENCTF officers were video taped by defendant Bachand throughout.

101.    The recording by Bachand has been incapacitated, not taken or destroyed.

102.    The four boys, that included the plaintiff Martin Conroy, were grabbed and handcuffed by ECNTF officers and held upstairs in the residence.

103.    Photographs taken by ECNTF officers were taken of the residence.

104.    The search warrant and raid purportedly resulted in this multi-town task force seizing a small amount of marijuana in the garage.

105.    Also seized was " …'dime' bag of an unknown powder (later determined to be a workout supplement)."

106.    Despite the search warrant seeking application stating that it was based on probable cause that the residence had marijuana; ECNTF officers, in an obvious attempt to gin up charges against plaintiff Christine Conroy, seized two bottles of liquor.

107.    Based only upon this seizure of the two bottles of liquor, and with no evidence that any of the minors had consumed any alcohol or any controlled substance, the defendants decided to seek a warrant charging the plaintiff Christine Conroy with the felony charge of Risk of Injury to a Minor.

108.    On September 10, 2012, Goncalves submitted for an arrest warrant for plaintiff Christine Conroy for the charge of Risk of Injury to a Minor, which was "denied" by the State's Attorney.

109.    Martin Conroy was falsely arrested for interfering with the search warrant and assorted marijuana infractions.

110.    Eleven-year-old plaintiff P.C was issued a juvenile summons for Possession of Less than ½ ounce of Marijuana, Possession of Drug Paraphernalia and Possession of Alcohol by a Minor.  Superiors rescinded all these charges.

111.    On September 6, 2012, plaintiff's friend that recorded the August 22, 2012 incident at the plaintiff residence seeking return of his mobile phone that he used to record the officers and that was unlawfully seized.

112.    Defendant Bisi contacted Goncalves to "confirm that the task force had no further need for the cell phone and that it could be returned to the owner.

113.    Upon return of the cell phone the recordings taken were erased.

114.    Thereafter, on September 13, 2012, Goncalves submitted another warrant for plaintiff Christine Conroy for Delivering Alcohol to a Minor and Hosting an Underage Drinking Party, which was executed on September 19, 2012 and disseminated to the media.

115.   The arrest warrant affidavit for plaintiff Christine Conroy contained material misrepresentation including that she provided alcohol to minors and was hosting an underage drinking party.

116.   The charges against plaintiff Christine Conroy were subsequently dismissed.

117.   This is an action for money damages and equitable relief to redress the deprivation by the defendants of rights secured to the Plaintiffs to be free from illegal search and seizure and excessive force and undue bodily harm.

118.   The defendants search and seizures were unlawful and violated the plaintiffs' rights secured under the Fourth Amendment to the United States Constitution.

119.   The Defendants had a duty to perform the responsibilities of their positions without the use of excessive force.

120.   Considering all the facts and circumstances, the Defendants employed unreasonable force.

121.   The defendants should have known that emotional distress and physical injury was the likely result of their actions.

122.   As a consequence of the actions of the defendants, the Plaintiffs suffered great humiliation, pain, embarrassment, anxiety, stress, emotional mental upset, eating disorder, loss of sleep and the physical injuries mentioned above.

123.   For the reasons set forth above, the injuries to the Plaintiffs were the direct and proximate cause of the intentional actions of the defendants.

124.   The defendants, during all times mentioned in this action, acted under color of law of the Constitution and Statutes of the United States and State of Connecticut, the laws, charter, ordinances, policies, rules, regulations, customs and usages of the State of Connecticut and Towns of Glastonbury, Manchester, Vernon and South Windsor.

125.   The defendants, by their conduct violated the rights guaranteed to the Plaintiffs by the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Connecticut.

126.    The defendants, by their conduct were deliberately indifferent to the medical needs of the plaintiff and violated rights guaranteed to the Plaintiff Martin Conroy by the Eighth Amendment to the United States Constitution and the Constitution of the State of Connecticut.

127.    The defendants, by their conduct violated the Substantive Due Process rights guaranteed to the Plaintiffs by the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Connecticut.

128.    The defendants, by their conduct violated the Equal Protection rights guaranteed to the Plaintiffs by the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Connecticut.

**COUNT TWO**          **(Deprivation of Civil Rights under 42 U.S.C. § 1983   (False Arrest)**

1-128.    Paragraphs 1 through 128 of Count One are hereby incorporated as paragraphs 1 through 128 of Count Two.

129.    The acts and conduct of the individual defendants and of the police department of the Towns of Glastonbury, Manchester, Vernon and South Windsor constitute illegal search, false arrest, false imprisonment, for which the defendants are liable to the Plaintiffs.

130.    The defendants arrested the Plaintiffs and restrained Plaintiffs' physical liberty against their will in an unlawful manner.

131.    As a result of the false arrest and imprisonment, the Plaintiffs suffered damages.

132.    The acts of all the defendants are in violation of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution and Article First, §§ 7 and 9 of the Connecticut Constitution.

133.    The acts of all the defendants violate the Equal Protection and Substantive Due Process clauses of the Fourteenth Amendment.

**COUNT THREE**          **(Deprivation 42 U.S.C. § 1983 as to Glastonbury, Manchester, Vernon and South Windsor.**

1-133.   Paragraphs 1 through 133 of Count Two are hereby incorporated as paragraphs 1 through 133 of Count Three.

134.   The defendant Caron in his capacity as the Chief of Police of the defendant Town of Glastonbury is a policy maker for the Town of Glastonbury and it's Police Department.

135.   The defendant Montiny in his capacity as the Chief of Police of the defendant Town of Manchester is a policy maker for the Town of Manchester and it's Police Department.

136.   The defendant Kenny in his capacity as the Chief of Police of the defendant Town of Vernon is a policy maker for the Town of Vernon and it's Police Department.

137.   The defendant Reed in his capacity as the Chief of Police of the defendant Town of South Windsor is a policy maker for the Town of South Windsor and it's Police Department.

138.   The Towns of Glastonbury, Manchester, Vernon and South Windsor Police Departments defendants, jointly and severally, had the legal duty to establish, enforce, direct, supervise and establish and control policies, customs, practices, usages, and procedures to be used by police officials.

139.   The police defendants acting within that duty had by various acts of omission and commission fostered and encouraged an atmosphere of lawlessness, repression and a repetitive policy, custom and practice of illegal, aggressive, abusive, and assaultive behavior and procedures toward persons which represented the policy, practice, custom, usage and procedure of the Towns of Glastonbury, Manchester, Vernon and South Windsor., and that Defendants' assault upon the plaintiff was in furtherance of the practice, custom and procedure of the Towns of Glastonbury, Manchester, Vernon and South Windsor.

17

140. The Towns of Glastonbury, Manchester, Vernon and South Windsor Police Department defendants, jointly and severally, have a custom and practice of falsely arresting, fabricating charges and maliciously prosecuting those charges against individuals who have been subjected to excessive force.

141. The aforementioned false criminal charges against the Plaintiffs brought by the defendants on was in furtherance of the unlawful practice, custom and procedure of the Towns of Glastonbury, Manchester, Vernon and South Windsor.

142. The defendant Towns failed and refused to competently investigate Defendants in order to avoid liability for this and other potential claims.

143. The police defendants, jointly and severally, with knowledge of repeated allegations of abusive and assaultive behavior toward detainees and arrestees by Towns of Glastonbury, Manchester, Vernon and South Windsor police officers repeatedly failed to enforce established procedures to insure the safety of individual arrestees and detainees; failed to discipline police officers who had been found to have committed abusive and assaultive behavior toward detainees and arrestees; and failed and refused to competently investigate allegations of abuse and assault by police officers.

144. The complained of acts represent the official policy of the Towns of Glastonbury, Manchester, Vernon and South Windsor.

145. The acts of all the defendants are in violation of 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and Article First, §§ 7 and 9 of the Connecticut Constitution, they violate the Equal Protection and Substantive Due Process clauses of the Fourteenth Amendment.

146. The Plaintiffs seek a declaratory judgment that these polices are in violation to the United States Constitution and injunctive relief from the court that they be ceased immediately.

**COUNT FOUR  (False Arrest and False Imprisonment)**

1-133.      Paragraphs 1 through 133 of Count One are hereby incorporated as paragraphs 1 through 133 of Count Four.

134.      The acts and conduct of the individual defendants and of the police department of the Towns of Glastonbury, Manchester, Vernon and South Windsor constitute false arrest, false imprisonment, for which the defendants are liable to the Plaintiffs at common law.

135.      The defendants' conduct caused the Plaintiffs severe distress and the Plaintiffs' damages

**COUNT FIVE  (Negligent Infliction of Emotional Distress)**

1-133.      Paragraphs 1 through 133 of Count One are hereby incorporated as paragraphs 1 through 133 of Count Fie.

134M.      The acts and conduct of the individual defendants and of the police departments of the Towns of Glastonbury, Manchester, Vernon and South Windsor constitute negligent infliction of emotional distress upon the child, for which the defendants are liable to the Plaintiffs at common law.

135.      The defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress, and that the emotional distress would result in illness or bodily harm.

136.      The defendants' conduct caused the Plaintiffs severe distress and caused the Plaintiffs damages.

**COUNT SIX  (Intentional Infliction of Emotional Distress)**

1-133.    Paragraphs 1 through 133 of Count One are hereby incorporated as paragraphs 1 through 133 of Count Six.

134.    The acts and conduct of the individual defendants and the police departments of the Towns of Glastonbury, Manchester, Vernon and South Windsor constitute intentional infliction of emotional distress upon the children, for which the defendants are liable to the Plaintiffs at common law.

135.    The defendants' intended to inflict emotional distress, or knew that or should have known that emotional distress was a likely result of their conduct.

136.    The defendants' conduct was extreme and outrageous.

137.    The defendants' conduct cause the Plaintiffs severe emotional distress and caused the Plaintiffs damages.


**COUNT SEVEN  (Malicious Prosecution as to all defendants)**

1-133.    Paragraphs 1 through 133 of Count One are hereby incorporated as paragraphs 1 through 133 of Count Seven.

134.    Despite having no probable cause to arrest defendants maintained the aforementioned charges against Plaintiffs and forced them to undergo numerous court appearances, humiliation and indignity of being falsely accused and prosecuted for charges defendants all knew were false.

135.    Defendants maintained the prosecution to cover up their misconduct and the liability of the defendant Towns of Glastonbury, Manchester, Vernon and South Windsor.

136.    The actions of defendants was willful and outrageous and intended to punish Plaintiffs for asserting their rights under the United States and Connecticut Constitution and laws.

138.    Defendants' conduct was willful and egregious, entitling Plaintiffs to an award of punitive damages.

20

**COUNT EIGHT (Assault and Battery as to Defendants)**

1-133.     Paragraphs 1 through 133 of Count One are hereby incorporated as paragraphs 1 through 133 of Count Four.

134.     The actions of the defendant Defendants constituted an assault and battery to the Plaintiff Martin Conroy.

135.     The Plaintiffs claims damages.

**COUNT NINE**   (Liability under CGS § 52-557 -Towns of Glastonbury, Manchester, Vernon and South Windsor)

1.     Counts Four through Eight are incorporated by reference.

2.     Pursuant to Connecticut General Statutes § 52-557 The Defendant Towns of Glastonbury, Manchester, Vernon and South Windsor are liable for damages inflicted by the individual defendants pursuant to the common law claims.

**COUNT TEN**   (Liability under CGS § 7-465 -Towns of Glastonbury, Manchester, Vernon and South Windsor)

1.     Counts Four through Eight are incorporated by reference.

2.     Pursuant to Connecticut General Statutes § 7-465 The Defendant Towns of Glastonbury, Manchester, Vernon and South Windsor are liable for damages inflicted by the individual defendants pursuant to the common law claims.

**JURY DEMAND**

The Plaintiffs requests a trial by jury.

21

M

**WHEREFORE**, THE PLAINTIFFS CLAIMS:

1. Compensatory money damages;

2. Injunctive relief and declaratory judgment that the arrest policy and excessive force and failure to investigate are unconstitutional.

3. Punitive or exemplary damages;

4. Attorneys fees as provided by 42 U.S.C. S 1983 and 1988;

5. Common law attorneys fees;

6. Such other relief as in equity may pertain.


/S/     *James S. Brewer*

_____

James S. Brewer
67  Russ Street
860-217-0652
Fed. Bar No. ct 07019
jbreweratty@gmail.com